Your Honor, I'd like to reserve three minutes for rebuttal, Your Honors. Good morning, Dean Pegg for defendant appellant Beau Lewis. You want your clock to say ten minutes? Excuse me. Are you dividing arguments? Oh, yes, we are at ten minutes each, and I'd like to reserve three minutes for rebuttal. You set the clock at ten. Your Honors, in my oral presentation, I'd like to address two issues. First, I'd like to address the question of the jury instruction that the court gave on entrapment, and then second, I'd like to address the issue of speedy trial and what Mr. Lewis submits was a clear speedy trial violation. As to the first issue, the government suggests that because the jury concluded that Mr. Lewis had not been induced, that he was somehow not prejudiced by the erroneous jury instruction. Mr. Lewis believes that's wrong. The erroneous instruction infected the jury's deliberation on the question of inducement. What the instruction in essence said was, it was an if and then instruction, and it said if you find that he was not predisposed, then it is not entrapment if he merely provides, the agents merely provide an opportunity to the defendant. Now, nobody argued that he was predisposed in the case. The government never argued it below. Mr. Lewis argued that he was not predisposed, and the court made a number of comments that we've cited to suggesting that the court believed that as well. Was that objected to? Excuse me? Was an objection raised to that instruction? Well, yes. Mr. Lewis objected to that instruction. In the same fashion that you're arguing today? No, not specifically. And the record is a little bit unclear on this other point. Mr. Lewis submitted the Model Ninth Circuit instruction. What actually happened was the government made a submission of jury instructions, which included the Model Ninth Circuit instruction, and that wasn't actually filed, so it's not actually in the record. The submission was dated on – it's undated because it's not filed, but Mr. Lewis filed a response, a written response, which is in the record, on March the 5th, 2001. And I can direct the Court to the excerpt of record that's on page 632, his excerpt of record, docket entry number 218. And in that memorandum, he agrees to the portion of the Ninth Circuit model instruction as unmodified, without the not. Well, it would have been easily done at trial if counsel just told the court, well, this is not what we agreed upon, and strike the not part out. That would have been easily done, and then the court would have probably done it, right? Well, I'm not sure if the court would have done it. That's another issue. But the discussion – If both sides agreed on what you're saying now. Well, I can tell you that what's in the record is actually very, very limited. There's only two lines where the court says, I'm going to insert a not here. And the problem is that the court actually, as I remember, had a colloquy that was not on the record related to this jury instruction. So it's really – I mean, I can't really – yes, I mean, the bottom line is, I think that Mr. Lewis could have objected below and stated more specific grounds. But the focus at that time was on other parts of the jury instruction. And he stated, or his counsel stated, a good two pages of objections related to other portions of the entrapment instruction. So clearly there was a lot of objections to this instruction. The instruction itself goes on for almost two and a half, three pages. So it's a very lengthy instruction. But to address the other point, even if there was no objection below, which Mr. Lewis does not concede, it plainly was plain error. The government doesn't address any of the cases that Mr. Lewis has cited. Lessard, McKazian and Sterner, all of which say that this is plain error. And there's this type of defect in the jury instruction is plain error. And that's not – I don't think – it's not a point that's been debated, at least effectively. If I can finish with the – I'll go back to my argument about why the fact that they may have found that he was not induced still doesn't cure the instruction. It's because what, in essence, this instruction did was it directed the jury to a verdict. It said that if you find that Mr. Lewis was not predisposed, then it is not entrapment if the government merely provides an opportunity. Now, the government points out that, well, this is a correct statement of the law, this last phrase, that only providing an opportunity is not inducement. Well, that's not what the instruction says. The instruction says merely providing an opportunity. It does not say only providing an opportunity. And so what the instruction effectively did was it cut off the jury's deliberation on that point, because the government usually provides an opportunity. They certainly did provide an opportunity in this case. And there was no further need to go on and look to see if the government provided more. You have less than four minutes left if you're going to get to your speedy trial argument. Thank you, Your Honor. Let me address the speedy trial argument. I – Mr. Lewis cannot conceive of a more egregious violation of the Speedy Trial Act than the one that occurred in this case. Below, he pleaded with the court for almost two years to get a trial date. He pleaded repeatedly, repeatedly, repeated. And at the government's insistence, the court repeatedly denied him that right. Then when he pointed out that his rights had been violated because the court had failed to make any findings whatsoever during this period of January 2000 to May 2000, a period of five months, everybody leaped on this motion in limine. Nobody knew it was pending. Everybody had forgotten about it. It had nothing to do with the trial date. But everybody leaped on it and said, well, you know what? There's this H1F exclusion that now excludes two years of time from its filing to the time in which it was decided. Now, I've read – we've filed a 28-J letter about the Gorman case. And Gorman – let me address Gorman for a second. I have two points to make about Gorman. The first is that I think you can read Gorman. It's possible to read Gorman. And there's a line at page 115 of the opinion, and it talks about motions that are decided after trial or during trial. And I think you could read Gorman to say that for motions that could be decided during trial, they won't exclude time. And so that this motion, this motion to sequentially present the agents or allow the agents to testify more than once during trial is really what the thing is after. I guess you could resolve almost any motion during trial, couldn't you? Exactly. You could do that with a motion as apprentice. With the possible exception of a motion to continue, I think you could do almost everything during trial. And, you know, kind of the most perverse – So you wouldn't have any speedy trial? It would always be a violation if you went over the 70 days, right? Excuse me? If you had pending motions that could be resolved during trial under your theory, you would have a violation of the Speedy Trial Act every time you went over 70 days, right? Well – Because you couldn't exclude those motions. I wouldn't quite read it that broadly, or my reading of Gorman. But actually, that would bring me to the second point, which is even if Gorman, Springer, and George were read to say – were read to limit Clymer, in essence, to his facts, that only a motion decided after trial can exclude time, which, by the way, George doesn't actually say because George – well, which George – well, if these cases can be read that way, the problem is that is truly an illogical result because there are so many motions that have nothing to do with the trial date, that have nothing to do with causing a delay in the trial date, but that would exclude time because the court would simply schedule this motion to be heard on the day before trial starts, on the day after trial starts, two days after – and these – the types of motions that – Or schedule it for pretrial. Exactly. That's what happens in these cases. You continue the trial regularly, year after year. You automatically continue the pretrial if you want to hold a pretrial two weeks before trial. Exactly. So there would be nothing left of the speedy trial, right? Not much. And there – that's actually what happened in this case. This motion – oh, I just noticed my time is up. But this motion to allow the agent to testify more than once was pegged to the final pretrial conference. And so every time the court continued the trial date, that motion moved. And it was like trying to hit a moving target because, as Judge Reinhart points out, it could keep going forever. And all you had to do was keep kicking the trial date and then the motion would follow and then you'd just keep excluding time. And you've totally now inviscerated the act. The clause, result of, result from, has no meaning at that point. Why even put it in the statute? I mean, there's just no point at that point. All right. That's your argument. Thank you. May it please the Court. George Poisson on behalf of Mr. Palooch. I would like to address the venue issue and then some sentencing issues on behalf of Mr. Palooch. The venue issue in this case is whether or not the 545 is properly venued in any district in which the package may indeed pass. In this particular case, there's no question that all the activity and the conspiracy or the substantive acts occurred in Arizona. The defendants lived in Arizona. Their conspiratorial agreement, if there was a conspiratorial agreement, occurred in Arizona. The only connection to the Northern District was that the packages for some shipments went through the port of entry in Oakland. They were shipped express mail or Federal Express from the Far East and on their way to Arizona, they passed through the port of entry in Oakland. Now, the question is, is that whether that is too attenuated. Even if we look at, we assume that this offense is a continuing offense, is it fair and is it proper to have a venue properly placed just where the packages fortuitously may go through the port of entry? There are many ports of entry in California. In fact, in this case, there was evidence that there was a port of entry that the packages might have gone through in Anchorage, and that goes to the count 33, the December shipment, for which Oakland port of entry, there's no record of that package going through. And I submit to the court that in a 545 offense, it should be where the packages was intended to go, where defendants resided, where all the activity occurred, not just where the package might have gone through. This is a case where there was no real connection to the Northern District of California. The only connection later on was where some phone calls were made to that relate not to these specific counts, but because Mr. Morrison and the field and game people had set up a sting operation that started in Arizona and then went to the Northern District. But the basis for the jurisdiction was only because the packages might have gone through the port of entry in Oakland. If you get count 33 set aside, does that make any significant difference in your client's sentence, everything else being the same? Your Honor, it may. It's a question of relevant conduct, because count 33 is the importation of the, I guess, the most valuable animals for purposes of relevant conduct. So if count 33 was set aside and we couldn't consider those for relevant conduct, it could make a substantial difference. But they still could be considered relevant conduct, maybe under the law. Even though it's the venue wasn't, right? It's the same as an uncharged defense. That's true, but it's still the prosecution would have to prove by preponderance of the evidence. And the question is whether they could use that. And I guess that leads to the second issue in terms of relevant conduct in this particular case. The issue is, is that what is, should my client have been responsible for all six shipments? It's clear from the evidence presented at the trial he's only charged with three of the shipments, three of the six. The other three weren't charged against him. Yet for sentencing purposes he was found to have been involved in all six, or it was foreseeable to him. But it must be admitted by the government that the reason there was three other shipments was the fact that the method allegedly utilized by my client, Mr. Lewis, was so ineffective they wanted to freeze Mr. Palouche out of the loop and use a completely different method of importing the animals in the United States. So the question is, for purposes of foreseeability, are these other three shipments foreseeable to him? And the answer is, how could they be foreseeable if they were specifically going around him by using these other methods? And so going back to the question, is that in terms of count 33 and the other counts that, the other shipments that were used, we're talking a substantial difference in relevant conduct. We're talking about a difference of, for relevant conduct, for market value, an enhancement of six levels was used for Mr. Palouche. And if we take away the shipment of 33, we've eliminated substantial money. That's about $40,000. So we're down to a relevant conduct that probably is less than four in terms of market value. And if we eliminate the other shipments, we're down even further. So all this does make a difference in terms of sentencing. The other issue I'd like to discuss is the pecuniary gain and the market value of double counting. In this case, Mr. Palouche was given a market value enhancement of six and a pecuniary gain enhancement of two. It covers the same harm. I mean, the objection below was the fact that Mr. Palouche wasn't in it for pecuniary gain. There's no evidence that he profited or was intended to profit by his role in this offense. That was overruled by the court, and the court said, well, yes, you get the pecuniary gain enhancement, plus you get the market value. And that's the same harm. It addresses the same harm. And he's being punished twice, not only for the market value, which includes the gain and the otherwise financial motive involved, but he's getting an extra two points for that. And I contend that that's impermissible double counting under the guidelines and shouldn't be used. The final point I'd like to make, and I'd like to reserve a couple minutes for the rebuttal, is the minor role adjustment, which I asked for at the lower court and it was denied. In this case, Mr. Palouche was certainly a minor player compared to the others in this case. If we talk about the other defendants, there's Mr. Wong, there's Mr. Lewis, there's Mr. Burroughs. All these people were kind of the alleged core of the conspiracy to import animals into the United States. Mr. Miller and Mr. Liu King, who were treated differently, they were cooperating witnesses in this particular case. We could eliminate them, I guess, from the mix a little bit because they were treated a little bit differently because of their cooperation status. Of the other defendants, my client is certainly the most minor participant in this offense because his activity was allegedly to attempt to recruit others from Federal Express to help import the animals. Well, in fact, no one was recruited. Everyone that testified for the government said, you asked me, I didn't agree. He tried to recruit them, right? He attempted, according to the evidence, he attempted to recruit them. They all said no. They took no actions. And, in fact, Mr. Palouche, other than the picking up of the December 1997 package, had really nothing, didn't pick up the animals, didn't misdirect the packages in any way for any other of the shipments. Not the shipments, not the August shipment because that just didn't go anywhere. It was attempted to be delivered by another person. It came back and the animals died and created a big stink at the Federal Express facility. And the March shipment that my client was convicted of, Mr. Liu King picked the package up and delivered it to Mr. Miller's and Mr. Lewis's residence. So in terms of activity, Mr. Palouche had next to nothing in terms of activities. And this, he should have at least have been granted a minor participant. I wasn't asking for a minimal participant because then you'd have to be the least involved. But in terms of the other players in this particular case that weren't cooperators, he certainly was the minor player. All right. Thank you. You wanted to say a minute. I'll say a minute. Thank you. All right. Good morning, Your Honors. May it please the Court. My name is Todd Agard. I'm here representing the United States. Lewis and Palouche were properly convicted for their scheme to smuggle rare reptiles into the United States. I'll focus this morning on the issues that the defendants have raised and go first to the Speedy Trial Act issue. As the Court knows, there's been two different issues raised as to the Speedy Trial Act, and I believe that this morning Mr. Lewis has only focused on the one of the pending pretrial motion. That motion was filed on April 15, 1999, and the Court held a hearing and ruled on it on January 11, 2001. Now, the Court, in rejecting Mr. Lewis's Speedy Trial Act motion to dismiss, went back and said that that period was specifically covered by the exclusion H1F because that exempts any period of delay resulting from any pretrial motion. How do you account for the delay for the sequential testimony motion? That is the motion you're talking about. Yes, that's right. It's the same motion? Yes. Are you talking about the delay between the filing of the motion and its eventual resolution? Well, how many days were excluded based on that motion? That motion alone? Yes. I think that motion alone only turned out to be a period of a few months. I think it might have been January to May. More than the period of the Speedy Trial Act. If that exclusion is incorrect, you're over the time limit. I think that's right. I think that's right, yes. Well, let's talk about that a bit. Yes. Didn't the judge say from the onset that that motion would be taken up at a pretrial conference? Yes. What he said is I need more information about how this case is going to be presented in order for me to resolve this motion. And when he went back and denied Mr. Lewis's motion to dismiss on Speedy Trial Act grounds, that's what he said again is that it took me a long time to resolve that motion because I simply did not have the information. I don't want to resolve that motion until the time of pretrial, right? No. What he said was I need more information about how the government's case is going to be presented. Well, Judge Hawkins asked you, didn't he say from the beginning that he wanted to resolve that at pretrial? Yes, because he needed more information. Whatever the reason, he said that that was a motion he wasn't going to resolve until pretrial. You mean immediately pretrial? Or pretrial at pretrial? At the pretrial conference. Right. No, I think what he said is I need more information. I don't think he specifically said I'm only going to resolve it right before trial. I don't think he did. Nevertheless, in any event. Would you – let's assume he did. Okay. All right. Does that excuse compliance with the Speedy Trial Act if a judge says, okay, I'm not going to rule on motions until pretrial? The question isn't whether it excuses compliance, but whether it is compliance. Whatever you want to call it. Is it compliance? The Supreme Court – Hold on. Hold on. If at the outset, the first time you get a motion, the judge says I'm going to resolve all motions at the time of pretrial, which will be one week before trial. Yes. In that circumstance, there could not be a violation of the Speedy Trial Act. The Supreme Court specifically has addressed that issue in its Henderson v. United States case. What it said – Your answer is right. That's correct. As long as the judge says I will consider all motions at pretrial one week before the trial, then there cannot be a violation of the Speedy Trial Act in that case, no matter whether it takes five years, ten years to get to trial. Well, what – Is that right? That is right, and that is specifically what the Supreme Court held in Henderson. What the Supreme Court said is that it recognized that in holding that a court could not look at the reason for the delay in resolving the motion, that that created a potential for abuse. But the Supreme Court, citing direct legislative history on that issue, said that any potential for abuse should be policed by local court rules rather than by the Speedy Trial Act because Congress had made an explicit decision not to make that – not to have courts make that inquiry. In addition, I would point out that there is always the backstop of a due process Speedy Trial argument relying on the Barker v. Wingo factors as opposed to the Speedy Trial Act. But for some reason, Congress in the Speedy Trial Act placed no limits on the delay caused by a pending pretrial motion. And as I said, both Congress – But it caused by the motion. That's right. But what – If the motion doesn't cause the delay. Well, what this court – what this court – and I would suggest that Henderson precludes the exact inquiry because if you look at what Lewis is arguing, if you look at Lewis's brief, what he is explicitly saying is the motion should have been decided earlier. And that is exactly what Henderson says cannot be examined by a court – by the court under the Speedy Trial Act. So if we – if we agree with that it should have been decided six months earlier than you say, Andrew Henderson, that doesn't make any difference anyway. That's right. It simply – Congress simply did not include that inquiry under the Speedy Trial Act. And as I said, the Supreme Court has said that to the extent that courts should be policing that for potential abuse, that should be resolved by local court rule. So, for example, there could be a court rule that says, you know, if you're not going to resolve a motion until shortly before pretrial, then maybe it should be – it should be withdrawn until the time it can be – you know, various rules. You can't withdraw it if the motion is made by the other side. Well, that's right. There could be a court rule, though, that – I'm saying there are a number of different ways in which local courts could follow the Supreme Court and Congress's mandate. I'm having a little trouble following the argument. Maybe if I can just play out the concerns, you can respond to them. Sure. I can understand a district court saying my practice or the practice of this district court under our rules is that all pretrial motions should be raised – filed and raised at the pretrial conference. That's where I'll deal with them. And the lawyers on both sides say we understand that and therefore we're going to comply with the rules. We will file no motions until 30 days or 90 days before the pretrial conference is scheduled. And then let's say the trial in the case I've just described takes place outside the speedy trial guidelines. Is there a violation? So, in other words, if because of the local court rule a motion is delayed in filing – No one files anything. Okay. And the court will say we hear you, Your Honor. We want to keep you happy. We want to comply with the local rules. We won't file anything until you set the pretrial conference and we'll file them 90 days or 60 days in advance of that so they're ready for disposition at the conference. But we will not file them until Your Honor sets a pretrial conference. And then the trial is not scheduled for, say, three years. Mm-hmm. Then is there – There's always the question, of course, of the other factors. But that one exclusion would only apply from the time that the motion was actually filed. Okay. In that circumstance you would concede there is a speedy – there could be a speedy trial act violation. Sure. Because this act says from the time the motion is filed until it's resolved. Okay. We're clear on that one. Yes. But you say it's different if whatever the local rules are, someone files a motion and the court says, I've got this motion on nonsequential testimony. I'll take that up at the pretrial conference. And by the way, any delay occasioned by the filing of this motion is excludable. That's not a violation. And the trial takes place three years later. That's right. That's Henderson. That's not a violation. That's Henderson. Okay? Yeah. I understand your argument. I don't necessarily agree with it, but I understand it. But in any event, we have a very strong argument that we've made in our brief, that even if this court could look at the fact – go beyond what I've said it's legally allowed to do and look at the reason for the delay here and whether it was reasonable, that it was not clear error for Judge Jenkins here to conclude that the delay in setting this – deciding this motion resulted from – that the delay in the trial resulted from the deciding of this motion. Judge Jenkins went back and said, listen, I went back, I reviewed the record, I know why I decided this motion. I could not decide this motion until I had more information from the parties. And I didn't have that information from the parties at the time you're saying I should have decided this motion. Judge Jenkins knew when he could decide the motion, and he said explicitly on the record, I couldn't decide it then. I didn't have the information. We have this judge in the next case, and he was certain at sentencing who was Kwan and who was Chang, and it turns out he was dead wrong. Well, here I think you can actually look at the record and see that there are a number of factors. He was not very interested in getting this case to trial quickly in this case. He was told a year before that the man's lawyer was going to have to go overseas for the international tribunal, and his client wouldn't be able to have his lawyer anymore unless they brought it to trial within a year. A year from then, it had been going on for a year or two by then, and that didn't seem to cause anybody to have any greater effort. I would strongly disagree with that. The fact that they weren't able to bring it to trial within a year does not mean that no one was trying for that. Well, who was trying to bring it to trial, the government? Of course the government was trying to bring it to trial. It's just that there was a variety of factors that were making that very difficult. I would point out that this goes beyond the Speedy Trial Act issues that are presented here, but if you're just looking at a Gestaltian does-this-sit-well-with-us perspective, there are a number of reasons why it took a long time for this case to go to trial. There was an ongoing investigation. The co-defendant was overseas? That's one factor. There was an ongoing investigation. There were superseding indictments that were adding new defendants as that investigation proceeded. There was, as you said, the fugitive defendant who had not been severed, and I point out that Mr. Lewis did not file a motion to sever until very late in this proceeding and, in fact, specifically said that he wasn't going to file such a motion. There was a very complex legal scheme. There was thousands and thousands of pages of record. I don't know about that. There was an enormous record in this case of all- Is this a case of importing lizards? That's right, but there was a huge volume of recorded transcripts here, and there was- How complex can a scheme be? It's just curious. Well, if you look at the indictment, it's actually quite complex. What do you do when there are terrorists? Watch, I guess. Okay. There were 55 counts in this indictment at the time that the court was- It was eventually narrowed because- Are you trying to tell us this case was overcharged also? No. I would say that this was a very extensive criminal scheme that was at issue, and because of the multiple defendants. Now, Mr. Lewis wasn't involved in all 55 counts that were involved. At any rate- Oh, and one final thing about the Speedy Trial Act issue is that Mr. Lewis has suggested that people simply forgot about the motion. Now, he and his counsel may have forgotten about the motion, but the government and the- and I don't think there's any sign that the district court forgot about the motion. As I've said all along- We've got to get you on to some other issues. That's right. I'll go then out of the entrapment instruction issue. I think this is a very straightforward issue. There is an if-then statement that was made in the instruction. The then statement is correct no matter what the if statement is. It is always true that merely providing an opportunity to commit a crime is not entrapment. Therefore, no matter what the district court had said in its if statement, if it had said if the moon is full, it still would be a correct statement of instruction. Nevertheless, Mr. Lewis has assigned a very specific error to that instruction. That error is that it could have led the jury to believe that some- that predisposition could occur after the initial contact with government agents. That if statement that was made by the court said nothing about that, and in the immediate sentence immediately preceding that instruction, the court had specifically clarified that exact issue and said that predisposition is only to be judged pre-contact with government agents. Finally, as to the issue of prejudice, the jury very specifically found inducement and did not reach the issue of predisposition. Therefore, any decision- any misstatement on the issue of how to judge predisposition could not have affected the jury's finding as to whether there was inducement or not. Going to the issues that have been raised by Mr. Plooch, the venue and the sentencing. On the venue, this is a very easy issue because 18 U.S.C. 3237A explicitly covers offenses involving importation and says that venue is proper in those offenses in any district through which the imported object moves. Now, Mr. Plooch has argued that this court should rely on the Brennan case out of the Second Circuit, but that only involved the issue of the use of males aspect of 3237A. We're not relying on the use of males language. We're relying on the importation offense, and there can be no question that importation in violation of law is an importation offense. Is this where they cleared- is the Northern District of California where these items cleared customs? Yes, that's right. There's one question. Count 33 didn't clear there. How do you take care of count 33? To the extent that there is a question about any of the counts, it would be about count 33. First, this is only a preponderance of the evidence standard. This isn't a beyond reasonable doubt standard for venue. And relying specifically on the Stitzer case out of the Eleventh Circuit and the Trenary case out of this circuit, courts of appeals have had no trouble where there is a series of transactions and other transactions have all- there is direct evidence that the other transactions occurred through that venue. The courts have had no trouble upholding under virtually identical circumstances as this. Have to be coming from the same place and going to the same place, or how do you- Well, what happened, for example, in the Stitzer case, is you have a series of drug transactions moving from Florida to Chicago. And one of them, there was no evidence about where the drug started. And what the court said is where all the other shipments started in Fort Lauderdale and made their way up to Chicago, it was reasonable to find by a preponderance of the evidence that this shipment did the same. Did all these come from the same location in our case? All these turtles and lizards and things? They came from Indonesia and Malaysia, yes. But those are different countries. Well, but they're- I mean, they're Southeast Asia, but obviously they're different. Right, but where you have all the- where you have the other shipments coming through Oakland, I think it was perfectly reasonable for the court to find, again, by a preponderance of the evidence that this shipment would have done the same. Now, in the alternative, we have this alternative argument about the aiding and abetting that Lewis committed by sending the money for the shipment through this district. So there's two independent means by which you could find venue for this. Are there counts that are not smuggling counts? There are- well, you mean the smuggling statute or that didn't involve smuggling? Well, I don't know. In your brief, the first section is headed both on the heading under argument and in the table of contents, venue was proper for the smuggling count. What we meant is the smuggling statute. There are other offenses, such as the Lasiak mislabeling, that you might think of factually as smuggling, but the crime was not smuggling. Does that mean the venue was not proper for the other count? Venue was only challenged for three counts of which Palooch was convicted, those 33, 34, and 35, which are the smuggling statute. He has not raised any venue problems as to the Lasiak mislabeling count. The only ones he challenged are what you call smuggling counts? That's right, 33, 34, and 35, which are smuggling both in the factual sense and in the legal sense of being the smuggling statute. Okay. Finally, I'll go briefly to the issue of sentencing. His argument as to pecuniary gain and market value we've addressed in our brief, but the first problem is that he says that the district court relied on pecuniary gain. That's not true at all. Actually, what it found was that it was relying on the otherwise commercial purpose. All it found was that there was a commercial purpose in imposing one enhancement and then in imposing another enhancement based on the market value of the wildlife. As we point out in our brief, market value of wildlife is related to the extensiveness of the scheme and it doesn't go to the same factor as the otherwise commercial purpose. His argument as to being a minor participant, again, all these issues are resolved for clear error, but his argument just seems to be he was the most minor of the defendants involved in this trial and that's simply not the standard for whether he should get a minor participant. I didn't hear that to be his argument. I heard his argument was that, in fact, he stated that the counsel stated he wasn't the most minor. He's not claiming he was the most minor, but that he's entitled to. I heard that, too. I think what he said is I was the most minor of these defendants and then later said I wasn't the most minor of all. I may not have been the most minor of everyone involved in the scheme. His argument is I was kind of minor. Kind of minor. That's right. And what I would say is that the fact that he was first, the fact that Lewis from very early on was telling Agent Morrison that he was coming up with the scheme with Palooch shows that he was intimately involved in the planning of the scheme, and second, the fact that he was out recruiting people and the fact that he was unsuccessful in recruiting people I don't think makes any difference, but the fact that he was recruiting people to that scheme shows that he wasn't a minor participant. Well, you say that's a matter of clear error, that no objection was raised below that. Well, no, it's clear error just because it's a factual finding. Oh, okay. Clear error, not plain error. Yeah, not plain error. Which, speaking of standard of review in my last 40 seconds, just to go to the entrapment instruction issue is clearly a plain error. The fact that he raised other objections to the same instruction that had nothing to do with this issue and the fact that, I mean, he I think has conceded this morning that he did not raise the objection that he now makes before the court. If he had, the court would have had an opportunity to decide whether it was misstating the law, and therefore the plain error standard must apply. Thank you, Judge. Thank you. Your Honor, let me briefly address some of the speedy trial arguments that I heard. First, Counsel for the Government talks about Henderson and Henderson's impact on the questions before you. That is a red herring. The Clymer court pointed out the difference between what's at issue here, which is the question of whether or not delay results from a motion, a pending motion, and whether or not that delay is unreasonable. And I'm quoting from page 830. We emphasize that our conclusion would be different if the delay in this case had resulted from the pendency of the motion dismissed. Any period of delay resulting from any pretrial motion is excludable from the filing of the motion through the conclusion of the hearing on or the disposition of the motion. Whether or not the delay in holding that hearing is reasonably necessary. Where delay commencing a trial results from the pendency of the motion, as when the district court holds off trial pending a hearing on the motion, the delay will automatically be excluded from the Speedy Trial Act calculation, no matter how unreasonable or unnecessary that delay might seem. That is the difference here. In Henderson, there were a number of motions, including a suppression motion that was argued, rebriefed, argued, reconsideration was the motions were filed, and that delayed the trial. Here, this motion held was out in abeyance for two years, and then suddenly someone discovered it, and all of a sudden it was going to exclude all this time. One thing that Judge Hawkins mentioned, just to clear up the timing of this motion, the motion was filed and briefed in April 1998. What the government is asking for is an exclusion of five months, nearly eight months after the motion had been filed. So it's not just the five months at issue here. It's got to run for two years. Another government, another suggestion that the counsel made was that the government was solicitous of trying to get a speedy trial here. That suggestion, based on the record, is laughable. Mr. Lewis repeatedly asked for a speedy trial. And I'm quoting from page 10 of his brief. There are innumerable instances where he's asking for a speedy trial, where he's asking him to set a trial, where he's making a motion to sever. And in every single instance, the government opposed that request. The court was a little bit more candid at one point, and I'm quoting from page 21 of the brief. The court agreed, I am sensitive to your concern and your right. You have been, you've wanted to get to trial in a much more expeditious fashion, and I have denied those requests. In each instance, the government opposed it for whatever reason they came up with. And it just frustrated his ability to get a trial in a speedy manner. As a matter of course, these motions in limine are decided at the final pretrial conference. That just happens in practice. And there's a good reason for it, because if the matter is going to go to trial, the judge is going to want to spend the time to kind of decide some of these things. It's kind of silly to decide and spend a lot of time deciding a motion to present the agent's testimony and installments, if in fact the case pleads or it never is disposed of in another way and it never actually goes to trial. So as a matter of course, these types of motions are going to be decided at the final pretrial. And there are a number of other motions that under the government's reasoning are going to exclude time for 5 years, 10 years, 15 years. Motions, for instance, to have the defense investigator sit at defense counsel table. That's a motion in limine. A motion for a James hearing on co-conspirator statements. A motion for a 104 hearing on 404B evidence. All these motions would exclude time. Are you saying that it's the practice in this district to generally schedule motions of that nature for the pretrial? I think it is. And I wish I could quote you the local rule from the northern district. I do know as just a matter of practice that that's generally what happens. The court, unless it's an enormous case where, you know, it can be dealt with. But in general, if it's a case that involves wiretaps or any kind of search issues, the court will try to eliminate those search issues or the wiretap issues first to get some sense of what the scope of the evidence is. And then motions such as this motion, which are really directed at the presentation of evidence at trial. And, you know, the kind of rather outside the substantive issues of evidence and things like that, but more kind of the procedural how are we going to conduct the trial are handled more closer to trial and in the normal course of things at the final pretrial conference. So, well, in closing, I just think that any number of motions will justify continuing the case and finding excludable time ad infinitum. And it is just going to eviscerate the act and the limitations. Do you agree we can't look at whether the delay is reasonable? Yes, I do. And if delay only the issue is you see it is whether it was the motion that caused it or whether it resulted from the motion or whether it was not the motion that was caused the delay. Yes. And the best way to kind of highlight that is to juxtapose the facts from Henderson with the facts from this case. Okay. Well, we'll have to read to him. All right. Thank you. Your Honor, in the one minute I have remaining, I do want to point out that the venue challenge was to the conspiracy count and the three substantive 545 smuggling violations. Mr. Poosh was acquitted of the false labeling counts. There were three false labeling counts. He's acquitted of those counts. So we've challenged on venue grounds all the counts of conviction, which are the smuggling and the conspiracy count. In terms of the issue of minor, the issue is whether you're minor compared to other people in the conspiracy. The charged defendants in the indictment were Lewis, Oscar Shue, who was a fugitive, but he was one of the major smugglers from the Far East. Mr. Wong, who allegedly was the largest smuggler in the Far East. Mr. Burroughs, who had many, many times where he brought items into the United States, in fact, kimono dragons, eventually once bit someone quite prominent. And Jeffrey Miller. These were the defendants that were charged. Mr. Miller, for which my client was compared with. Mr. Miller was a person who benefited from the scheme. He was involved in at least four of the shipments. He was a prime mover, sold the animals that he received in successful shipments. So this is the people you compare him with. Now, there are other people involved in the scheme that may be less involved than Mr. Palouse, but Mr. Palouse, certainly of the charged defendants and the people that were prominent in the scheme. What is the test? Should he be compared to all the people involved in the conspiracy or just to the people who were charged in this indictment? Well, there's only two other people really that were that were brought into this particular indictment. And Mr. Liu King. Your answer is in this case, it doesn't make any difference. Whichever definition you in this case, no matter what, he's a minor player. I'm not asking for a minimal participation. That would just put him that we have nothing. But I'm asking for a minor participation adjustment of two levels. So thank you very much. Thank you. OK. All right. Thanks very much. Case disargued will be submitted. Thank you all for the argument. And the court will stand. We'll take a brief recess for the morning.
judges: Reinhardt, Siler, Hawkins